### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

## AT CASSVILLE,

### APRIL TERM, 1852.

Present—JOSEPH H. LUMPKIN, } Judges.
         HIRAM WARNER. *

---

No. 38.—WILLIAM DOUGHERTY, plaintiff in error, *vs.* MARSH & BREERS, defendants in error.

[1.] All levies of chattels, real and personal, of the defendants, must be satisfactorily accounted for, before an execution will be allowed to interfere with property, bought of the debtor by a third person, and in his possession.

[2.] It is not competent for a Justice's Court to re-open a *fi fa.* which has been entered satisfied by the sale of land, on the ground that the entry was a nullity, no title to the property having passed to the purchaser; jurisdiction was the subject-matter, being restricted exclusively, by the Constitution of the State to the Superior Courts.

[3.] If facts are allowed to be proven to affect a purchaser with notice, it is admissible for him to inquire into all the circumstances which would shew that notwithstanding he bought with notice, still, he has a superior equity to his adversary.

[4.] *Fi. fas.* having been entered satisfied, both by the return of the levying officer and the plaintiffs, and the credits thus endorsed, being subsequently vacated by the Court: *Held,* that lands sold by the execution debtor, to a *bona fide* purchaser, after the entry of payment and before the *vacation*, could not be affected by the judgment.

---

* NOTE.—Judge NISBET was prevented, by severe indisposition, from attending at this Term.—REPORTER.

*Claim,* in Walker Superior Court. Tried before Judge Jno. H. Lumpkin, October Term, 1851.

For the facts of this case, see the decision of the Court.

Dougherty, for plaintiff in error.

Akin, for defendant in error.

*By the Court.*—Lumpkin, J. delivering the opinion.

This is a writ of error to a claim case, tried in Walker Superior Court, October Term, 1851. It seems that sundry *fi. fas.* issuing from a Justice's Court, at the instance of Marsh & Breers, against John Mahan, and James Russell, security, were levied on lot of land, No. 213, in the 12th district and 4th section of what was originally Cherokee, but now Walker County, which was claimed by William Dougherty. On the trial, the plaintiffs tendered in evidence, the original executions, with the entries, the reading of which to the Jury, was objected to, on the ground that they are satisfied in full. There had been divers levies of real and personal property made under these *fi. fas.* A tract of land had been sold for enough to discharge them in full, principal, interest and costs ; and a receipt to that effect had been indorsed by William R. Breers, one of the plaintiffs. Personal effects, too, had been seized at different times.

To rebut the entry of satisfaction by the officer and the party, the plaintiffs relied on an order passed by the Magistrates of the 71st district G. M. to which the executions were, by law, returnable, to the effect that the credit by one of the plaintiffs was a nullity, no actual payment having been made ; and it was therefore ordered, that the *fi. fas.* be re-opened and proceed against the defendants, as though no such entry had been made. All the other levies were accounted for except one, by proving that they had been dismissed by the attorney of the plaintiffs, on the ground that the Constable not having given bond and security, and taken the oath of office, as prescribed by law,

Dougherty *vs.* Marsh & Breers.

was not authorized to make the levy.  The levy by James Mahan, Constable, on John Mahan's interest in lot No. 217 of the 12th district and 4th section—consisting of three years' lease of the premises, together with the crops growing thereon—made the 21st day of August, 1843, was wholly undisposed of in any way.

The Court overruled all the objections to the testimony, and directed it to be submitted to the Jury, which was done, and thereupon the claimant excepted.

[1.] Holding, as we do, according to the universal practice of all the Courts throughout the State, that this last levy was sufficient to arrest the further progress of the *fi. fas.* until it was explained, our next inquiry is, was it competent for the Justices to pass the judgment which they did, re-opening the executions, after they had been discharged, both by the Sheriff and the plaintiffs?

[2.] By looking into the record, it will be discovered that the money thus receipted for, was the proceeds of a tract of land, sold as the property of one of the defendants, and purchased by the plaintiffs, or one of them ; and the order of the Court was based, upon the assumption, that there being no entry upon the executions at the time of sale, of no personal property, no title passed to the purchaser.  But it is clear that this Court had no jurisdiction to act in the matter.  It was a question of title to real estate, the adjudication of which, is restricted exclusively, by the Constitution of the State, to the Superior Courts. To that forum alone, then, the plaintiffs must be remitted for relief, if, indeed, they be entitled to any.  With a full knowledge of the condition of the executions, they direct a sale to be made of the land under them, and they themselves become the purchasers.  Even if the property had been bid off by a stranger, it would be extremely questionable whether he would be entitled to have his money refunded ; especially after it had, as in the present case, passed into the pockets of the plaintiffs.

[3.] The plaintiffs were permitted by the Court, in despite of the objection of the claimant, to prove that James Russell, the defendant in the executions, had, through William Dougherty, the

claimant, as his attorney, recovered the land which had been sold by the Sheriff, in an action of ejectment, on the ground that there was no entry of no personal property on the *fi. fas.* at the time of the levy. The claimant then offered to shew, that Russell, at the date of the levy, had personal property, to wit : horses, cattle, hogs, &c. sufficient to pay the debt; that he pointed out the property and desired the officer to levy on it, which he was prevented from doing by the plaintiff's attorney, who directed the *fi. fas.* to be levied on the land, which was done in the Town of LaFayette, without the officer's going near the premises or having made any search for personal property. To all which, the plaintiffs, by their counsel, objected, and the evidence was ruled out; to which the claimant excepted.

To rebut the equity in favor of the claimant, as an innocent purchaser, the proceedings in the action of ejectment were suffered to be introduced in evidence, by which it was intended to charge him with notice that the executions were not in fact paid, although returned satisfied   Without stopping to inquire how far the party to the execution, who bought this property, is entitled to the benefit of this equity, it would seem that it was competent to shew that he acted in fraud of the law and in bad faith, in forcing a sale of the defendant's land, when he was in possession of personal property sufficient to satisfy the judgments. Would not the purchaser be permitted to ask the aid of Chancery to restrain the plaintiffs in *fi. fa.* from disturbing his bond until the personal property in the hands of the defendants was exhausted ? If so, then this testimony is admissible.

[4.] Intermediate the time when the satisfaction was entered by the creditor and the *vacation* ordered by the Court, the claimant became the purchaser of the land, and he requested the Court to instruct the Jury, that if he was a *bona fide* purchaser, that he would be protected, and that the order re-opening the *fi. fas.* would not relate back so as to override his conveyance. This charge the Court refused to give; but on the contrary, held that after the *fi. fas.* were re-opened, they found all the property which the defendants had held at the date of the

judgments, notwithstanding the same may have been transferred during the period when they were entered paid off, to a purchased for a valuable consideration and without notice. Is this the law?

The principle involved in this question, has frequently come under review, upon applications by officers, Sheriffs and Constables, to amend their returns, and the uniform doctrine has been that the rights of third persons could not be prejudiced; much less will the party himself be permitted to amend his own entry, so as to affect the interest of innocent purchasers.

In *Howard vs. Turner and Buck vs. Hardy,* cited in *Means vs. Osgood,* (7 *Greenl. Rep.* 146,) the Supreme Court of Maine say: " In each of these cases we allowed such amendments to be made, but the litigation was between the original parties, and it clearly appeared that no conveyance had been made of the property, on which the amended return would operate; and that no one would be affected by such amendment, except the parties. This, we think, " continues the Court, " is the extent to which we can go. To permit a material change in the return, of a fact, whereby the rights of a *bona fide* purchaser, without notice, are to be wholly defeated, would be a laxity in practice, too unsafe to be permitted."

And so we say. Third persons refer to the records, to ascertain the condition of a debtor, and find that all the judgments against him are discharged, both by the return of the proper officer, as well as by the receipt of the creditor himself, filed with the papers. The lien on the defendant's property is extinguished; and ignorant of any existing equities, he buys for a valuable consideration, what he believes to be, and what apparently is, a good title. It would be unreasonable, by any subsequent alteration of the state of the facts, that the title thus acquired in the interval should be prejudiced. This negligence, or whatever else you may call it, on the part of the plaintiffs or the officers, must not be allowed to be repaired at the expense of others.

This point was directly made and decided, in *Taylor vs. Ranney,* 4 *Hill's N. York Rep.* 617. A *fi. fa.* having been returned satisfied, an entry was made on the docket, of the judgment,

pursuant to the Statute of that State. The law here, requires it to be done on the execution docket; and the return was afterwards vacated by the order of the Court. And it was held, that the land sold by the execution debtor, to a *bona fide* purchaser, after the entry on the docket and before *vacation*, could not be affected.

"The terre-tenants," say the Court, "purchased at a time when the judgment had ceased to be a lien, and it would be a great hardship upon them to give such a retroactive effect to the amendment which the Sheriff was afterwards permitted to make in his return, as would overreach and defeat their title. It was the fault of the plaintiff, that the original return was wrong. They ought to bear the burden instead of casting it off upon *bona fide* purchasers. If the Sheriff was guilty of misconduct, the plaintiffs may have an action against him ; and it is much more reasonable to confine them to that remedy, than it would be to allow them to visit the fault upon innocent third persons.

A different decision, we are satisfied, would be productive of great mischief. And we do not find a case where an amendment of this sort, whether of the act of the officers, or of the party, or both, will be allowed to operate so as to defeat the rights of third persons. In every conflict between litigants, under such circumstances, the Courts have always restrained the tenant's title, derived from the judgment debtor.

Let the judgment be reversed.